

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00174-CR

———————————————————

PHILLIP JACOB CRUZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1667059

---

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Phillip Jacob Cruz appeals his conviction for aggravated robbery with a deadly weapon. *See* Tex. Penal Code § 29.03(a)(2). The jury found Cruz guilty of the offense as alleged in the indictment, found the habitual-offender enhancement paragraph true, and assessed his punishment at sixty years' confinement.[1] *See id.* §§ 29.03(b), 12.32(a), 12.42(d).

Cruz alleges that the evidence is insufficient to support that he was the perpetrator of the offense.[2] We disagree and will affirm the trial court's judgment as modified to correct several clerical errors.

## I. EVIDENTIARY SUFFICIENCY

Cruz argues that the evidence supporting identity is sparse. To support this assertion, Cruz points to his medical records to show that he had been injured in an automobile accident several months before the robbery and claims that his physical capabilities at the time of the offense were "inconsistent with the actions of the robber

---

[1]Cruz absconded after jury selection, and the trial continued in his absence. The trial court deferred the pronouncement of Cruz's sentence until he was apprehended more than three years later. *See* Tex. Code Crim. Proc. art. 42.03(a) (noting that sentence must be pronounced in the defendant's presence). Cruz's sentence was pronounced on June 4, 2025.

[2]Cruz acquiesces on appeal that the evidence was sufficient to support the other elements of the offense, stating, "An aggravated robbery was committed—this evidence just doesn't show by whom." Thus, we forego a full recitation of the background facts of the case and discuss only the evidence that is relevant to identity. *See* Tex. R. App. P. 47.1.

in this case." He therefore concludes that his injuries at the time "rule him out as the perpetrator." Cruz also relies on what he describes as inconclusive eyewitness testimony and grainy surveillance footage as further examples of how the evidence failed to support the jury's finding that he was the offender. Cruz likewise argues that an eyewitness identification of him was unreliable because the witness identified him after having run an internet search on his name. All of Cruz's arguments fail to successfully challenge the jury's verdict.

## 1. Standard of Review

In an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when

viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

The State may prove a defendant's identity by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Additionally, testimony of a single eyewitness can support a jury's verdict. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Mack v. State*, No. 14-16-00877-CR, 2018 WL 285263, at *3 (Tex. App.—Houston [14th Dist.] Jan. 4, 2018, no pet.) (mem. op., not designated for publication).

## 2. Analysis

Despite Cruz's arguments, our analysis is simple: During his testimony, Kelvin Goston positively identified Cruz as the offense's perpetrator, and the jury was entitled to find his testimony credible.[3]

---

[3] Other evidence from the police investigation also tied Cruz to the offense, as did Cruz's absenting himself from the trial following voir dire. *See Hammack v. State*, 622 S.W.3d 910, 918 n.33 (Tex. Crim. App. 2021) ("[C]ertain conduct by a defendant can be construed as circumstantial evidence of consciousness of guilt."); *see also Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).

On December 1, 2020, Goston was working overnight security at the "Berry Game Room," which typically closed at 6:00 a.m., when a man knocked on the door between 6:10 and 6:15 a.m. Goston yelled through the door, "[H]ey, we closed, you're not getting in tonight, it[']s over." The man did not leave and knocked on the door again between one and three minutes later. When Goston opened the door to talk to the man, the man reached for Goston's pocket and the two of them "struggled at the door a little bit."

Goston put his hands up after the man reached for him, and he started backpedaling, telling the man, "[W]e don't have anything, it[']s closed, it ain't no money in here." The man had a gun with a green laser on it, and Goston continued to backpedal and plead with the man—backing himself into a corner. Despite Goston's efforts to show the man he was not a threat, the man pointed a gun at Goston and shot him in the right side of his abdomen. The bullet lodged in Goston's left hip, damaging his small intestine and colon; these injuries required Goston to undergo multiple surgeries.

At trial, Goston testified that the man who shot him was wearing a hoodie with the hood up, but he did not have a face covering. Instead, the man kept trying to cover his face with his hands. When the man eventually dropped his hands, Goston could see that the man had facial hair on the bottom of his chin. Goston estimated that the man was between 5'8" and 5'11" and described him as stocky and biracial—believing he may have been Hispanic and Black. Goston also told the jury, "I saw his face. I had

5

three to four different clear views over his face, because . . . he came and stood over top of me." Goston reiterated several times during his testimony that he had seen the man's face. Goston testified that he had never previously seen the man before that morning.

Goston identified the person who shot him as Cruz based on Cruz's previously admitted mug shots, telling the jury, "[T]here's no questions asked on who I'm looking at right now." Goston further explained that although he had never participated in a photo lineup with police, he had searched the internet for Cruz's name after his surgery and recognized the resulting image as the person who had shot him.[4]

On appeal, Cruz's argument implies that Goston was influenced by "his own investigation finding Cruz's photo on the internet." However, Cruz points to nothing in the record to support this implication. Instead, Goston's testimony was that he had identified Cruz based "[s]olely on [his] memory" from the events on December 1, 2020, and not based on the picture he saw when he "Googled" Cruz's name.

Based on Goston's testimony that he had a clear view of the perpetrator's face and his identification of Cruz as the same man who shot him after seeing Cruz's mug shot, the jury, as the sole judge of a witness's credibility, was permitted to believe

---

[4]Goston testified that his mother had given him Cruz's name because Cruz had been arrested while Goston was recovering from his injuries. Goston stated that he did not know Cruz based on his name, so he "Googled" Cruz's name. He recognized Cruz from his mug shots as the man who had shot him. Goston was not given the opportunity to identify Cruz in court because Cruz did not attend the trial.

Goston's testimony. Resolving any conflicting inferences in favor of the verdict and considering that the jury's inferences were reasonable based on the cumulative force of the evidence, we must defer to the jury's resolution. *See Braughton*, 569 S.W.3d at 608. Further, we note that testimony from a single eyewitness is sufficient to support a jury's verdict. *See Bowden v. State*, 628 S.W.2d 782, 784–85 (Tex. Crim. App. 1982) (holding that some inaccuracies or inconsistencies in a witness's description of the suspect do not automatically render the evidence insufficient and that reconciliation of any conflicts and contradictions are within the province of the jury); *see also Floyd v. State*, No. 02-22-00082-CR, 2023 WL 2033831, at *3, *6 (Tex. App.—Fort Worth Feb. 16, 2023), *aff'd on other grounds*, 714 S.W.3d 9 (Tex. Crim. App. 2024). As a result, the evidence is sufficient to support the jury's finding that Cruz was the perpetrator of the crime as alleged in the indictment and we overrule Cruz's sole issue.

## II. MODIFICATION OF THE JUDGMENT

An appellate court may modify a trial court's written judgment if the necessary information to do so is contained in the record. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *see also Rouleau v. State*, No. 02-24-00247-CR, 2025 WL 1197379, at *7 (Tex. App.—Fort Worth Apr. 24, 2025, no pet.) (mem. op., not designated for publication). "This power does not depend on a party's request, nor does it turn on whether a party has objected in the trial court." *Pixley v. State*, No. 02-24-00151-CR, 2025 WL 2423507, at *13 (Tex. App.—Fort Worth Aug. 21, 2025, pet. ref'd) (mem. op., not designated for publication) (footnote omitted) (first

citing *Mayo v. State*, 690 S.W.3d 103, 109 (Tex. App.—Amarillo 2024, pet. ref'd) (op. on reh'g), then citing *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)).

Although not pointed out by either party, we note multiple errors in the written judgment of conviction signed by the trial court. Among those errors are the date the sentence was imposed, the date the sentence commenced, and the date the judgment was entered. Here, the record contains all the necessary information required to correct the judgment for the three errors identified above.

Accordingly, on our own motion, we modify the judgment to correctly state that:

- the "Date Sentence Imposed" is on "06/04/2025";

- the "Date Sentence Commences" is on "06/04/2025"[5]; and

- the "Date Judgment Entered" is on "06/04/2025."

## III. CONCLUSION

Having overruled Cruz's sole issue on appeal, we affirm the trial court's judgment as modified.

---

[5]On June 4, 2026, this court received a supplemental clerk's record from the trial court that included an "Order Amending Judgment and Sentence." In the order, the trial court's sole modification of the judgment is for the "Date Sentence Commences." In the written judgment, the "Date Sentence Commences" is "Upon Apprehension." The order amended this to state that the "Date Sentence Commences" should be "06/04/2025." As noted above, we agree. Out of an abundance of caution, and in the event the order was not a legally binding amendment, we too have modified the judgment to reflect that the "Date Sentence Commences" is "06/04/2025."

8

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 2, 2026p